Council, please proceed. Good morning, Your Honors. David Anton, representing Carrie Tritchler in this matter. I'm going to try to reserve five minutes for rebuttal time. I'd like to first address the 11th Amendment issue that's raised in this case. In the issue about the 11th Amendment, there are a number of aspects to it that need some attention here. Why are you outstanding to raise it? That's my basic question. Well, one of the reasons... It's affirmative defense. I don't understand how you can raise an affirmative defense on behalf of the plaintiff. And that's exactly a problem that the district court had with this issue. However, the Ninth Circuit and the U.S. Supreme Court have all held that it is something for a plaintiff to raise to the district court if the defendant has asserted the 11th Amendment in its answer. In Hill v. Blind Industries, the Ninth Circuit... The Ninth Circuit stated that because of the unique aspect of the 11th Amendment where it can be asserted in the answer and then held back in your back pocket as you litigate through the case... It's altogether different. As I recall, I was on the panel on that case. You were. And what happened was the state stuck it in the answer and then lay in the weeds with it, didn't make a motion or anything, waited to see if they'd win. And then after they lost, they said, ah, 11th Amendment, you can't touch it. No. It was the state asserting it all the time or the charity that purported to be the state. The decision of the Ninth Circuit makes it crystal clear that the entity, Blind Industries, never, ever put it in their answer and never raised it until just before trial. And it was the key part of the Ninth Circuit decision that the state entity... You filed a complaint in federal court, didn't you? We did. Correct. Now you're turning around and saying, you're arguing against yourself and saying, well, that should never have happened because the defendant is immune. It seems to me that they shouldn't be allowed to do that. And you're saying it with Hill, which is where the defendant is saying we're immune, not the plaintiff saying that the defendant is immune. That makes quite a bit of sense. Absolutely. And this is part of the dilemma that the district court dealt with. However, in the jurisprudence regarding this, there's no issue about who brought it up. The issue is, under the Ninth Circuit... Maybe that's because it's so weird for the plaintiff to bring it up. Actually there are a number of cases with... Look, it's an immunity. It's not a lack of jurisdiction. It's immunity that relates... It's a waivable immunity. It's a waivable immunity that... That means it's not jurisdictional. Actually the way the cases talk about it, it's kind of a funny mixture of the two. Sure, it's been construed as a waivable immunity that goes to the jurisdiction of the court. If the defendant has asserted the Eleventh Amendment, it has raised the issue about the jurisdiction of the court and has preserved that. Hill versus... At some future point. But why in the world can you rely on it? Because it applies here and the state didn't do what it needed to do, absolutely needed to do, to have waiver. And we as the plaintiff, let's take this case and put it in a different context. Let's take this case where exactly as they've done, they've raised it in their answer, and then as the U.S. Supreme Court and the Ninth Circuit has held, they have asserted it so they've preserved it. And let's say we went to that second trial. And let's say Trichler, contrary to what happened here, won. And then, let's say, the state then said, we raised Eleventh Amendment immunity. We're out. That was the problem. And it doesn't change it that the effect later on down the road is that Trichler lost. No. The Ninth Circuit in Hill says the defendant, when they put the Eleventh Amendment immunity in their answer, gives fair warning to the plaintiff to do what? To raise the Eleventh Amendment issue that they brought up in their answer so it can be decided by the district court. So what you're telling us squarely is you're entitled to litigate on behalf of Trichler all these many years to lose in front of a jury, in fact, to get in front of a jury twice and lose, and then to say, oh, none of it counts, none of it counts, we haven't lost at all, the court never had jurisdiction, even though we sued here. Absolutely in this circumstance. Because at the time when the Eleventh Amendment was raised and put straight before the district court, that second trial hadn't happened. Now it's your job to look at whether the district court was right in that decision. And an analysis of what the district court had before it is it was wrong. And the district court clearly says that it's going to ignore numerous issues just because of the type of misapprehension here that, hey, it's their affirmative defense, they're not the ones bringing the motion. So I can – district court, I can ignore it. Could the district court just suppose hypothetically that you were to prevail on this? Could the district court properly charge you and your client as a condition of dismissal the costs and attorney's fees involved in all of the wasted proceedings? The issue about whether costs can be awarded if the Eleventh Amendment is what causes it to no longer be in the court has been addressed by the Ninth Circuit. And they have held that standard costs can be awarded because you're no longer in the federal court and it's not a dismissal based on lack of prejudice, it's a dismissal based on lack of jurisdiction. In that situation, one of the issues that should be addressed – this isn't something in the briefs, but we raised this issue prior to that first trial – I mean, prior to the second trial. The first trial, we had Title VII in this case. There was a full federal statute that gave the district court authority over all the parties. That was no longer in the case at the time of the second – prior to the second trial. And when the Eleventh Amendment was brought up to the district court. Supplemental jurisdiction. Right. But supplemental jurisdiction doesn't work for the State if the Eleventh Amendment is appropriate. That's where the rub is. The district court under Hill has to look at the issue as to whether there has been California waiving it under statute. Never argued, never presented here. And second, whether there's been some sort of litigation conduct waiver under Hill. Hill makes clear distinctions that the critical component is whether in the answer the State has raised the affirmative defense of the Eleventh Amendment. Am I misremembering Hill? I thought in Hill what we did was hammer the party that had lay in the weeds until they lost and then tried to say none of it counts. I think – And it seems to me that you're that party. The party laying in the weeds – actually, I think you're misremembering Hill. Am I misremembering Hill? Yes. And, for example, a straight quote from Hill about this exact – I can't tell from quotes. You've got to give me facts and results. Sure. Well, what they said in Hill – This is one of the stuff leading up to it that has a bearing, qualifies and explains. Sure. Absolutely. And the aspect in Hill, the Ninth Circuit came to a specific point where they were talking about how are we going to distinguish some of these cases where there is litigation waivers and some where there is – I think that Kaczynski wrote the opinion, and we had a very delicate issue of how to deal with a Supreme Court opinion. But ultimately, what we did stood up. I actually think you're confusing it with another case. Am I? Yes. Kaczynski was not on this panel. So I believe you're confusing it with another case. It's probably possible there are a lot of cases. Right. I can imagine. No. What happened in Hill is the State entity had never put in its answer the Eleventh Amendment, never done it, never brought it up until just prior to trial, after they'd lost on summary judgment and they were getting a big clue they were going to lose. Then they say for the first time, and in the first document, hey, Eleventh Amendment. The Ninth Circuit, in trying to figure out what to do, looked at two prior Ninth Circuit cases, Gamboe and Asker. And in both of those cases, that it had been litigated substantially before the Ninth Circuit, before the Eleventh Amendment was brought up crystal clear, said in both of those cases where there was no waiver and the Eleventh Amendment was applicable, both of those, the State entity had brought the Eleventh Amendment in its answer. And it said, that's what's different about our case in Hill versus these prior Ninth Circuit cases. Has the defendant put it in its answer and given clear warning to the court and the other side that the Eleventh Amendment is in this case? And the Ninth Circuit said, if it's done that, then it's preserved it and there is no waiver. That's the decision in Hill. That's what we have here. There was absolute, it's in the answer not once, but twice with the supplemental answer two years later. So, I can understand the issue about, gee, this is the plaintiff raising an affirmative defense. Hill specifically says- These cases have anything to do with the plaintiff, do they? Absolutely. Hill specifically says, timely disclosure of the immunity defense provides fair warning to the plaintiff who can request a prompt ruling on the Eleventh Amendment. That's the Ninth Circuit in Hill. I don't say that the plaintiff gained any rights by reason of this, or it's any standing. You just don't have any standing to raise the issue, that's the basic point. Well, that's completely contrary to the Ninth Circuit statement in Hill, which is- Has there ever been a case where the plaintiff successfully and in opposition to the defendant raised an Eleventh Amendment immunity? Yes. What? I'll give you that in my rebuttal time frame. Good. I'd like to address the aspect of the waiver concept. The U.S. Supreme Court and the Ninth Circuit has consistently held that for the court to have found a waiver, it has to be unequivocal. The district court said it's not even going to consider it because, as pointed out, the district court thought it was something that the defendants only could be raising. Waiver is, once they've raised and urged the Eleventh Amendment, they put it in their answer, it's in there. There's no amended answer taking this out. There's no declaration from the Attorney General saying it's out. There's no evidence in this case that the state has authorized its pled affirmative defense of the Eleventh Amendment be wiped out. The standard is a clear, unequivocal waiver of the Eleventh Amendment. There's zero evidence of that. There's also an issue on the Eleventh Amendment as to who it applies to. There's no question here that it applies to the superior court. The other side hasn't contested that. On the issue of whether it applies to Mr. Poole, in the briefs, there was some discrepancy as to that, and the key elements are two things. One, the superior court that employed Mr. Poole as its supervisor, that had his direct supervisor being the court executive officer and the presiding judge. No question about that, that that's the supervisory chain. In the Ninth Circuit's decision in Zolan, that was decided in 1987, the Ninth Circuit held that superior court employees, even though they're paid by the county and they get county HR benefits and the like, are state employees. And then in Zolan, they said there's a second question, and that is, where's the money going to come from? And they said in Zolan, there was concrete evidence that if a judgment happened against the individuals, it would come out of the county's budget, not the state. So they said, because of that second test, who's going to pay or where's it coming from? They're going to view them as county folks, and the Eleventh Amendment doesn't apply. What we have here, though, is we have a number of years have passed and substantial change in the way California's courts function and are paid. When there was a consolidation of the municipal court and the superior court in California, the budget aspects changed dramatically. And we had testimony from Presiding Judge Crone on the stand that what happened was during that consolidation period, the budget went from a teeny amount being the state funding the bill to, by the end of the consolidation, the state being totally responsible for the budget and liabilities of the superior court. That testimony's reporter transcript 956. Very interesting, but what does it have to do with this question here, whether the Eleventh Amendment survives going through a trial with a jury, settling on the instructions, the judge asking are there any other motions, no motions, and the case goes to the jury, and then afterward you come up with the idea, oh, yeah, we did plead Eleventh Amendment in our answer, or somebody did, the other side did.  And I can understand this one boggling the mind to a point. What it has to do — We're holding all along that if you don't bring it up, if you don't raise it, you submit the case to the jury. The party having the benefit of the Eleventh Amendment loses it. In this situation, when the Eleventh Amendment, when there was no longer any Federal jurisdiction over the superior court, after Title VII was gone in this case, prior to any other trial, prior to anything, any motions in limine, the plaintiff made its request to the district court that the district court apply the Eleventh Amendment that the defendants had raised in their answer. So when we brought this to the district court, there hadn't been that trial where there was no jurisdiction over the superior court. There hadn't been the motions in limine. We hadn't known what the jury verdict was going to be. We raised it before that trial. And the district court said, no, and said, you're going to trial. What is the theory on which an immunity that, or a defense that can be raised by a governmental defendant becomes some kind of a springing use that goes over to the benefit of the plaintiff? It goes to the — It's not jurisdictional. That is, as I mentioned, very close line on how that works. What it does have to do with is they have raised that immunity. They have not waived it. There's no authority for the court to exercise its jurisdiction over the state once it's been raised. They can raise it, Supreme Court precedent, if they preserved it, which they did. They can then raise it at any time. Just out of curiosity, does any of this matter? The alleged sexual harassment happened 10 or 15 years ago. Two juries have said that there wasn't sexual harassment. And what you're trying to do is say the whole federal judgment based on the second jury verdict is null and void. Suppose it is. Won't you be barred by limitations from filing the case again in state court anyway? I don't believe so, Your Honor. I don't believe that that would be the case at all based on California law regarding tolling, Atkins told during the — Absolutely, Your Honor. — 10 or 15 years. And if it — if it isn't, that's our problem. But what this Court has to do is apply Eleventh Amendment law as Hill — If you want to reserve time — I'm leaving — — until it's a case where the plaintiff has successfully asserted the defendant's Eleventh Amendment immunity, you may want to reserve it now. I'm stepping down now, Your Honor. Thank you, counsel. Good morning. My name is Michael Seneff. I represent the County of Lake and the Lake County Superior Court. I have co-counsel here, Dana Simons, who represents Lee Poole, and I'm going to allocate my time so that we both can make a presentation. On this Eleventh Amendment issue, perhaps they do have a case, but we've never found a case that holds that a plaintiff who files their action in the federal court, goes — files their action and goes up to the eve of trial, here, retrial, can then assert the Eleventh Amendment immunity defense of a defendant and seek to have the action dismissed in the federal court so that they can refile in the state court. If there is one, we haven't seen it, and I'd be interested in hearing all about it. Does that make the complaint frivolous and sanctionable? I don't know that, Your Honor. This Court, in the Hill v. Blind Service Industries case, was pretty clear to say the Eleventh Amendment is an affirmative defense of the defendant. It is not jurisdictional, and it can be waived. Up to that point, there had been some confusion about whether or not the Eleventh Amendment was jurisdictional, and that was true at the time of the Gamboa decision that Mr. Anton just referenced. But in the Hill case, the Supreme Court — or the Ninth Circuit was clear to say that it is an affirmative defense. It can be waived. And what the Hill case also said is that it is waived by conduct of a defendant who has the immunity that is incompatible with the intent to preserve the immunity. So if you go ahead and you seek the jurisdiction of the court in litigating affirmative issues on the merits, as the county and the court did in this case, and has done for now nine years, eight years, that type of conduct under Hill is the type of conduct that is found to be a waiver. But here we even have more than that, because when this case was — And what Hill means is that if the trial had gone the other way and you had lost — I couldn't erase it. — we would not let you get the judgment set aside. That's correct. And that's what we did in Hill, as I recall. That's correct. But in Hill, the court is pretty clear to indicate that. And now the Supreme Court, in the Lapidus decision versus Board of Regents, which we cited and they don't reference, has been very clear to indicate that a defendant, a state entity defendant, can waive the Eleventh Amendment immunity by its conduct. In that case, it was a removal by the defendant to the federal court. And that's been followed in this circuit in the Bank of Lake Tahoe case. But in this case, we have more than just waiver by conduct. We have statements made on the record in the courtroom. Judge Yelston, when she first addressed this issue, hearkened back to the fact that after remand of this case from the Ninth Circuit, which happened in July of 2000, we went to a case management conference in October of 2000. And she asked us there, she asked all the parties there, she said, there are no more federal claims. Do you want this case to remain in this court or should it go back to the state court? Everybody said we want it to stay here. In December of 2000, the same question was raised again by the trial court. And we all acknowledged we wanted it to stay in the federal court. And then the plaintiffs go on, and after that, they attempt to amend their complaint to assert a new state court cause of action, and in doing so, they assert jurisdiction under 1367, pendant jurisdiction of the court, supplemental jurisdiction. Well, that motion was denied for another reason. Then we go on and what gave rise, of course, to this whole effort to get rid of the federal jurisdiction, is that the Ninth Circuit had issued a decision in Kohler versus Intertel Technologies, which came in July of 2001, and that's a decision that said there is an affirmative defense available to an employer that was initially available under Title VII, and it will be available under FIHOT. That decision came in July of 2001. In October of 2001, excuse me, I may have my date wrong here. Shortly after that, in July of 2001, we had a telephone conference with the court over the issue of case management and the trial date, because the trial date was then being set. Not one word was said about the issue of 11th Amendment immunity by the plaintiff or the defendant. The issue did not come up in that court until the county and the court had made a motion for summary judgment, raising the affirmative defense under the Kohler case. And the plaintiff responded in two ways. They responded against the motion on the merits, and they said this court should decline to exercise supplemental jurisdiction. That was in their opposing papers. At that point, they said nothing whatsoever about the issue of 11th Amendment immunity. We then went to a hearing on the motion. Judge Ilston gave us an indication of her tenaty ruling, which was that, number one, the motion for summary judgment would be denied because it's a factual issue, but she was going to let the issue go to the jury on the affirmative defense under Kohler. And secondly, that she was going to retain supplemental jurisdiction because she thought the parties had waived any issue over that under the standards of Gibbs, that she ought to retain it. It's only at that point, having heard the tenaty ruling, that they say, all of a sudden, this court doesn't have jurisdiction under the 11th Amendment. Our response to that immediately was to say in court at that moment, this is the County of Lake and the Lake County Superior Court saying, but the fact of the matter is that the 11th Amendment immunity, we are seeking this court's jurisdiction for resolution of these cases. That's in the supplemental excerpts of record at page 85. The 11th Amendment argument here, in all due respect, is an example of the legal adroitness that we have faced throughout this case and we're facing in this appeal. Just look at the issue of the jury verdict form that they're objecting to, which we believe is to be examined under an abuse of discretion standard.  It identifies a number of supervisors as being potentially actors in terms of this sexual harassment scene. Well, that came about because from the moment they opened this trial, opening statement through all of the evidence, they talked about all of these supervisors as being actors in the sexual harassment creation. They asked for a, and that's true even though they only had the Lee Poole as a defendant, the other court reporter. As the case went on, they proposed a jury instruction by which they asked to identify under the only instruction given to this jury about the county and absolutely liable for the conduct of supervisors. And they identified each of the individuals who are identified in the verdict form. We objected to that. We objected because we didn't feel they were defendants and the only one who should be identified as Lee Poole. Over our objection, that instruction was given. So the case went to the jury, and as it goes to the jury, if you're going to identify them in an instruction, then you should identify them in the verdict form. And that's exactly what this court did. The whole argument about this verdict form is premised on the concept that we somehow, somehow this jury failed to follow the court's instructions otherwise. And the court's instructions had pretty clearly said, this jury is to consider the instructions taken as a whole. No particular instruction is controlling. And it's to consider the totality of the circumstances and all of the evidence that's before it. This jury did that. They come back here once again and ask that this trial should not have gone forth as it did, because somehow the defense should be hamstrung or distraught from denying liability to Kerry Trichler because of circumstances that happened in the discharge of Lee Poole from his employment at the county of Lake. That is an issue we have urged that has been previously- Did Lee Poole bring a sexual harassment case? It struck me he might be the victim of sexual harassment by Kerry. Well, actually, although it's not before this court, yeah. I mean, this is the craziest bunch of lawsuits I've ever seen. He did bring one. He brought one, yeah. But it was taken care of, so. Explain the State agency determination in its relation to the case. Pardon, sir? I say explain the significance of the administrative finding to the case. The administrative finding? Lee Poole, after all of these investigations into the conduct about Lee Poole, the Superior Court, Judge Krohn, who was then the presiding judge, was acting as a department head, and he came to a series of conclusions that were that Lee Poole had engaged in conduct which violated three county policies. One, that there was a failure of good behavior which was of such nature that it caused discredit to his employment as a court reporter. This is in the excerpts of records at 154. Two, that there was sexual harassment of another employee. And three, that he had engaged in repeated, discourteous treatment of employees. Those were the three findings that he made. And to support those findings, he cited 15 different factual scenarios, some of which involved Carrie Trichler, some of which didn't. He never made any finding about which of these factual scenarios fell within which category of violation. So by the time he gets done, he said, you have violated these three rules of the Lake County Personnel Rules. And here are 15 circumstances where these violations were shown in the investigation that was undertaken, and you're discharged. Lee Poole appealed that to the Lake County Board of Supervisors under the County Personnel Rules, which he had a right to do. And the matter went ahead from that point on as a default proceeding. Lee Poole never appeared and contested anything happening before the Lake County Board of Supervisors. And what the Lake County Board of Supervisors ultimately did was it took the matter under submission based upon the record that was before it. And made a decision that because of that, we're going to affirm the findings of Judge Crone, and made a decision that he should be terminated. And that was the end of that. What has happened now is that plaintiffs, as they did before, when we were here, when we were- Counsel, were you going to give any time to Poole's lawyer? Yes, yes. I'll do that right now, Your Honor. Excuse me. Thank you. Thank you. Good morning. I'm Dana Simons, and I represent Lee Poole. A couple things I'd like to say is, first of all, on the 11th amendment, Lee Poole never pled the 11th amendment in the answer or the answer to the amended complaint that was filed. The appellants are seeking to hold Lee Poole bound by the 11th amendment on the basis that he was a state employee, which we believe is incorrect and not borne out by the true state of the facts, which are that Lee Poole was hired by the county, he was fired by the county, he was paid by the county. Wouldn't matter if he was, if he didn't plead the 11th amendment or assert it in any way, right? Well, I would agree that that's correct. However, we didn't plead it, and they're still saying that we're bound by it. So I'm offering other explanations for why it's not applicable to him. And the seminal reason is that if there was a finding of sexual harassment with damages awarded to Ms. Trichler, the county would have been responsible for paying any judgment against him. That is undisputed. Let's see here. One other point is that the Board of Supervisors' findings in Exhibit 98 at pages 151 to 153 concedes that Mr. Poole is a county employee as well. We view on behalf of Mr. Poole the raising of this issue as a delay tactic and an attempt to form shop, which we think should not be permitted by this court. The remainder of the arguments I would join in that Mr. Seneff has made on the issue of the 11th amendment. On the issue of supplemental jurisdiction, I reiterate also that Mr. Poole consented to the jurisdiction of the district court as did the defendants as well as the plaintiffs. Only on the eve of trial when they were facing an adverse decision by the court did they raise the issue that the court should not continue to exercise supplemental jurisdiction. And again, the timing of that is highly suspect and it appears to be manipulative. Mr. Poole has always wanted to have this matter put behind him and finalized. And we hope that at this juncture that will finally be the case because we're talking about allegations that were first raised in September of 1993. We've been now through two jury trials and years of proceedings and we hope that this matter will finally be put to bed. The issues of fairness, judicial economy, and comedy all weighed in favor of having this matter resolved at the district court level since we'd already been through countless years of proceedings. So we hope you'll affirm the court's continued exercise of supplemental jurisdiction. Now on the issue of judicial estoppel, I've counted seven times where that has been raised and briefed by us and decided, including one time in the first appeal. Mr. Poole was never given a trial until we went to trial for the first time in Judge Ilsen's courtroom on the issue of whether his conduct amounted to a violation of FEHA. The issues underlying the case in the administrative arena were whether he violated the county personnel rules. And the appeal was, the question on the appeal was whether Judge Crone's findings were, whether Judge Crone properly found that he violated the personnel rules. They had nothing to do with the FEHA standards. And as Mr. Seneff said, the findings say nothing about who the allegations were. The findings said that he violated and, excuse me, the findings by Judge Crone and the Board of Supervisors were that the conduct was discourteous and amounted to sexual harassment. But unfortunately, at that time, there were also more than one accuser. And there's no specific findings about whether it was Ms. Trichler or another person that were the subject of the treatment. And so if, it would not have been fair in any way, shape, or form for there to have been judicial estoppel or collateral estoppel for the issue of whether Lee Poole sexually harassed Carrie Trichler. We've been through two trials of that matter, and the court has, or the juries both have resoundingly answered that question, no. Let's see. And then the last issue I'd like to address is the issue of the tapes that Judge Elston did not allow Mr. Anton and Mr. Telfian to play to the jury. They didn't allow, or she didn't allow them to read excerpts in their case in chief and the evidence to the court.  We vigorously objected to the presentation of any of that exhibit, which was 111, which was the transcripts of the interviews that Lynn Dugan did with all the witnesses in the course of the investigation he did. Judge Elston ultimately admitted the exhibit over our objection, but did not allow our opponents to play or to recite certain portions of it into the evidence. But in effect, it was admitted for a limited purpose for what Judge Crone knew at the time he made his decision. However, Judge Elston did not prohibit them from reading selected portions of that exhibit to the tune of 20 minutes of their time for closing argument to the jury. So we had little snippets of the most salacious and inflammatory statements that were made without context. And so in essence, they got, even though it was in argument, they still got the benefit of letting the jury know from witnesses who were not present at the trial what certain people had said about certain topics. So I think that they got the benefit of that without, to our great prejudice. So if you don't have any other questions, I see that I'm out of time. Thank you, counsel. Thank you. Pritzler versus County of Lake. I think you had a moment left and we're going to give us a little. About two minutes there, Your Honor. First case of the Ninth Circuit is held that the 11th Amendment can be raised by any party or the court sui sponte in Ray Jackson at 184, Fed 3rd, 1046. One of the things that the questions from this court bring out to me is this whole thing about the time of this case, how long it went and how many trials. When we had the first trial, we had a Title VII cause of action square in the case. Title VII trumps the 11th Amendment. Ninth Circuit has held that. The US Supreme Court in Hibbs just recently confirmed that concept. So we had no ability to get the state or the pool or one or both out in this case, the first trial. The 11th Amendment was something raised, but Title VII trumped it. When we were sent back from the Ninth Circuit the first time, there was no Title VII case anymore. It was gone. The only thing left were state causes of action. And it's then that we raised the 11th Amendment prior to the next trial, prior to all the pretrial aspects. The idea that this case has been around for a while, it changed. And after it changed, we had a new situation and new facts. One thing I wasn't asked about that was brought up here, and it had also to do with the prior argument, the prior case, is the state administrative decision and what effect that has. After this Ninth Circuit sent us back for retrial, or sent us back thinking there'd be a retrial, the California Supreme Court in Johnson versus Loma Linda issued a very critical decision, and it said if you have a administrative decision, whether it's an internal grievance or something more formal than that, and it has to do with issues that you're raising or are being raised in a later case, you have to have that decision, if you don't like it, or you don't like the findings, reversed on mandate. You have to do that otherwise or binding. In this situation, Mr. Poole had that internal administrative grievance proceeding. He had appealed to the County Board of Supervisors. They had a hearing. He presented evidence and the like. He chose not to be there personally. But he had that hearing, and he had a decision. Decisions at 151 in the record. That decision says that he engaged in sexual harassment. That decision incorporates findings one through 15 of Judge Crone's report. It says we incorporate these. Look at- Isn't the law of the case against you on that? Pardon? Isn't the law of the case against you on that? Hasn't that been decided? No. What was decided by the Ninth Circuit is that under the federal judicial estoppel grounds, which is a discretionary grounds, that it didn't force that decision. But this is a different issue. This is now only a lawsuit involving state law claims. We have an intervening decision by the California Supreme Court establishing a new rule, a new policy, a new directive that's mandatory, not discretionary. And that mandatory directive is if you have that administrative finding, and the parties are all the people here, that is binding. And that binding decision was that Lee Poole had sexually harassed. Somebody. And incorporated the findings that showed that it was Carrie Trichler. Look at those findings. They're Carrie Trichler. Thank you, counsel. Thank you. Trichler versus County of Lake is submitted. You're adjourned until 9 AM tomorrow. All rise. The court is presented to stand adjourned.
judges: Cudahy, Kleinfeld,jones